## AS TO WHETHER THE SALE IN QUESTION WAS A CONDITIONAL SALE.

Court of Appeals for Hamilton County.

WILLIAM E. BARRS v. THE RUDOLPH WURLITZER COMPANY.

Decided, February 7, 1916.

*Sales on the Installment Plan—Error in Taking Case from Jury—Where a Determination is Required as to Whether Title Passed.*

Where goods are purchased on the installment plan, the amount remaining due being evidenced by notes secured by chattel mortgage, and the goods are afterward retaken by the vendor, it is error in an action brought by the vendee, for recovery of the amount paid on the theory that the transaction was a conditional sale, to withdraw the case from the jury, where testimony has been offered tending to prove it was understood at the time the sale was made that title to the goods was to remain in the vendor.

*Chas. H. Urban,* for plaintiff in error.
*W. S. Little,* contra.

GORMAN, J.

The plaintiff in error commenced an action in the common pleas court against the defendant in error averring in his petition that he had purchased from the defendant for the sum of $2,400 a certain musical instrument termed a "Paganini," upon the following terms and conditions, to-wit: $200 cash, and the balance of $2,200 to be paid in twenty-two monthly installments of $100 each, with interest; the title of said instrument to remain in the name of the Rudolph Wurlitzer Company until the entire sum of $2,400 was paid. Plaintiff in error further averred in his petition that on or about June 1, 1912, the said instrument was delivered to him, and he thereupon paid $200 cash on said purchase price; that he paid the first eight installments next becoming due, together with the interest thereon, amounting in all to the sum of $1,018; that on or about the 3d of

September, 1913, the defendant in his absence and without his consent took possession of said instrument without due process of law, and without tendering or refunding to plaintiff the money so paid after deducting therefrom a reasonable compensation for the use of said instrument. He asks for a judgment from said defendant in the sum of $1,080, with interest, upon the claim that the purchase of said instrument was under a conditional sales agreement, and that under the provisions of Section 8570 of the General Code he was entitled to recover from defendant the amount of money so paid before the defendant was warranted in taking from his possession said instrument.

The defendant by answer admitted the sale to have been on June 1, 1912, and that it was to be for $2,400—$200 cash and the balance of $2,200 to be paid in twenty-two monthly installments of $100 each with interest; but denies that the title was to remain in the name of the Rudolph Wurlitzer Company until the entire sum of $2,400 was paid. Defendant admitted that on June 1, 1912, said instrument was delivered, and that plaintiff paid $200 on account of the purchase price, and that the first eight installments of $100 each were paid, together with interest; admitted that on the 3d day of September it took possession of said instrument, but averred that it took possession at plaintiff's request; it denies each and every other allegation of plaintiff's petition.

Defendant further set up by way of cross-petition several notes and a chattel mortgage claimed to have been executed by the plaintiff in favor of the defendant, and asked for a decree of foreclosure of the chattel mortgage, and a decree finding the amount to be due under the mortgage.

The plaintiff replied denying that the defendant took possession of the instrument at the plaintiff's request, and denied that he executed and delivered the chattel mortgage to defendant to secure said notes.

Upon the trial of the case plaintiff, to maintain the issues offered himself as a witness, and, among other things, testified:

that one Ulrey, who was the agent of the defendant company, negotiated the sale of the Paganini to him; that on or about the 1st day of June, 1912, Ulrey went to plaintiff's place of business and there made the sale.

The court asked plaintiff, Barrs, the following question:

"You made the purchase of the machine. Now the question is what did Mr. Ulrey say about that, that is the question? A. (By Barrs.) Mr. Ulrey told me that the title of the machine remains in the hands of the Rudolph Wurlitzer Company until the notes were paid.

"Mr. Urban:

"Q. How did he come to tell you that? A. I asked him if I was unable to pay these notes, who does this machine belong to, and he says; 'You will be able to pay them all right' he says: 'I will fix boxes and things around so that you will get some kind of money derived from these boxes' and I said 'Well suppose I don't?' 'Well,' he says 'the title of the instrument remains in the hands of the Rudolph Wurlitzer Company'; so I purchased the machine."

Plaintiff's brother was also called and testified, among other things, as follows:

"Edward Bernard Barrs.

"Q. What did you hear Mr. Ulrey say, and what did you hear your brother, Mr. Barrs, say? A. When I got there he asked him, he says, 'To whom will the instrument belong, Mr. Ulrey?' And Mr. Ulrey said: 'The instrument will always remain the property of the Rudolph Wurlitzer Company until the notes are paid.'"

This was practically all the testimony offered by the plaintiff in support of his claim that the sale was a conditional one. At the close of plaintiff's testimony, when he had rested, a motion was made by the defendant to direct the jury to return a verdict for the defendant. After argument the court said:

"I have examined the record in this case and the testimony shows that Mr. Barrs—the record shows that Mr. Barrs testified that after he signed the notes and mortgage he asked Mr. Ulrey what would be the effect of that. Whereupon Mr. Ulrey

told him 'Well, you can pay it all right, I will fix it so that you will make some money; you will be able to pay all right.' After that he said 'Well suppose I don't make any money?' 'Well' he says, 'the title remains in the Rudolph Wurlitzer Company.'

"Therefore the petition will be withdrawn from the consideration of the jury. Now there is a cross-petition here that can be either continued or set for trial in another court or tried here."

Plaintiff excepted to the ruling of the court withdrawing the petition from the consideration of the jury.

It is claimed by plaintiff in error that there was evidence to go to the jury upon the question of a conditional sale, and that the trial court erred in withdrawing from the consideration of the jury the case made by the plaintiff in error and in refusing to allow the jury to pass upon the question of whether or not there was a conditional sale.

There was evidence offered during the trial of the case, by the defendant, consisting of the agreement in writing dated April 19, 1912, some time before the sale was made, in which this instrument was placed in the plaintiff's place of business by the Rudolph Wurlitzer Company on two weeks trial, and it was agreed that during the time it was on trial in plaintiff's place of business he might purchase the instrument for $2,400—$250 cash and the balance at the rate of $100 per month, the amount taken out of said instrument during the two weeks trial period shall be applied in liquidation of said purchase price, and the deferred payments to be evidenced by promissory notes secured by mortgage on said instrument. This paper was signed by William E. Barrs. It was not offered in evidence at the time plaintiff moved for an instructed verdict, nor could it properly have been offered in evidence at that time inasmuch as it was a part of the defense. It was offered in evidence subsequently to the ruling of the court upon the motion to arrest the case from the jury. A chattel mortgage on said instrument, dated June 1, 1912, was also offered after this ruling. There was evidence tending to show that the Rudolph Wurlitzer Company went to the plaintiff's place of business and took away

without process of law the musical instrument without the consent of the plaintiff.

We held that this case should have gone to the jury, under the rulings laid down in *Speyer & Co.* v. *Baker*, 59 O. S., 11. Among other things the conditional sales act, Section 8570, General Code, provides:

"When such property" (property sold under a conditional sales agreement) "except machinery, equipment and supplies for railroads and contractors, for manufacturing brick, cement and tiling, for quarrying and mining purposes, is so sold or leased * * * the person who sold, leased * * * or the agent or servant of either * * * shall not take possession of such property without tendering or refunding to the purchaser, lessee," etc., * * * "the money so paid, after deducting therefrom a reasonable compensation for the use of such property, which in no case shall exceed fifty per cent. of the amount so paid, anything in the contract to the contrary notwithstanding, and whether such condition be expressed in the contract or not. But the vendor shall not be required to tender or refund any part of the amount unless it exceeds twenty-five per cent. of the contract price of the property."

In the case under consideration the purchaser paid by admission of the pleadings, more than twenty-five per cent. of the purchase price—$1,018. There was evidence tending to show that the vendor took possession of the property without paying or tendering back any part of the money paid on account of the purchase price, and if it were a conditional sale then the plaintiff, the purchaser, was entitled to recover under Section 8570, General Code.

It was shown in the case above cited, *Speyer & Co.* v. *Baker*, that a chattel mortgage had been given upon the goods sold by Speyer & Co. It also appeared from the record that in the trial of that case in the common pleas court evidence was given which fairly tended to prove that, when the sale was made to the defendant, it was *verbally* agreed between the parties that the goods should remain the property of plaintiff until the purchase price be fully paid, and should become the property of defendant only upon such payment being made. The court, on page 24, says:

"There was evidence at the trial, though it was not without conflict, from which the jury might have found that the sales made by the plaintiffs to the defendant of the property in question were conditional sales of the character defined by the statute."

It appears to be the intent of the statute to permit the person who complains that the sale was a conditional one to show by parol evidence that it was a conditional sale, notwithstanding any contract or agreement in writing to the contrary. And in the case above cited, notwithstanding the fact that there was a chattel mortgage given to secure the payment of the unpaid balance for the goods, the court held that it was admissible to show by parol evidence that it was not an absolute sale but a conditional one.

In the instant case there was evidence tending to show that the title to this property sold to Barrs was to remain in the Wurlitzer Company until the entire sum of $2,400 was paid. It was for the jury to say, under the circumstances whether or not it was a conditional sale, and the court erred in withdrawing from the consideration of the jury the plaintiff's petition. It should have been submitted to the jury at the close of all the evidence under proper instructions.

It may be claimed that the rule laid down in *Speyer & Co.* v. *Baker, supra,* was modified by the case of *Chicago Cottage Organ Company* v. *Crambert,* 78 O. S., 149. In that case it was sought to show by parol evidence that there was a conditional sale, and the parol evidence was admitted. The evidence in that case which it is claimed tended to show a conditional sale was as follows: Mr. Morey, a salesman of the company, made the sale in that case.

(Page 157.)   "She (the vendee) looked at some of the pianos, and she was asked to 'tell the whole transaction.' Ans. 'As I was saying, I looked at the pianos. I saw a piano I liked, and I told him I would like to take that piano, and of course he told me it was a good piano, and I asked him what the piano cost. He said two hundred and sixty-five dollars, and the agreement I made with him, I would pay ten dollars down.

That was the agreement I made, and six dollars a month, and I paid him ten dollars and he said, 'Now, Miss Crombert, I know you will be prompt in your payments.' I said 'I will try to be as prompt as I can,' and he said, 'when you have the piano paid for—when all the payments are paid up the piano will be yours.' "

It will be noted that nothing was said about where the title was to remain until the piano was paid for, and the court in that case held that the statement that the piano would be Miss Crambert's when it was paid for, when made by the agent was a mere expression of opinion. The court says, on page 159-160:

"Neither party said a word about the title remaining in the vendor and therefore the minds of the parties never met on that point. What the salesman said about the piano becoming her property when the payments were made, is but the expression of an opinion. Whether he was authorized to make the remark or not is immaterial, because in our judgment it did not establish, or tend to establish, a contract between the purchaser and the company, that it should hold the title until the payments were made. The expression of an opinion by the salesman falls far short of making a contract of conditional sale."

It appears, therefore, that this last cited case does not in any way affect the ruling laid down in *Speyer & Co.* v. *Baker*. The evidence in the case under consideration did tend to establish a conditional sale, and it was proper to submit the question of whether or not this was a conditional sale to the jury for its determination.

For the reasons stated the judgment below will be reversed and the case remanded for a new trial.

JONES (E. H.), P. J., and JONES (Oliver B.), J., concur.